UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 04-20727-CIV-MARTINEZ
(Magistrate Klein)

THE LIQUIDATION COMMISSION
OF BANCO INTERCONTINENTAL, S.A.

      Plaintiff,

v.

LUIS ALVAREZ RENTA, BANKINVEST S.A.,
INTEDUTY FREE, LTD. and
WADEVILLE INVESTMENTS, LTD.

      Defendants.

_____/

**NIGHT BOX
FILED**

JUN 29 2004

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

## DEFENDANTS LUIS ALVAREZ RENTA AND WADEVILLE INVESTMENTS, LTD.'S MOTION TO DISMISS OR STRIKE AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Rules 12(b)(1), 12(b)(6) and 12(f), Fed.R.Civ.P., and the doctrines of international comity and *forum non conveniens*, defendants Luis Alvarez Renta ("Alvarez Renta") and Wadeville Investments, Ltd. ("Wadeville") hereby move this Court to enter an Order dismissing or striking the Amended Complaint and dismissing this action without prejudice. For the reasons set forth below, the motion should be granted.

## INTRODUCTION

On June 22, 2004, Plaintiff The Liquidation Commission of Banco Intercontinental, S.A. (the "Liquidation Commission"), after requesting and being granted a 30-day enlargement of time in which to respond to Defendants' pending motion to dismiss, instead filed, without notice or leave of Court, an "Amended

Complaint." The Amended Complaint is identical to the original Complaint with one exception: it names a new plaintiff – "Banco Intercontinental, S.A., duly represented by La Comision de Liquidacion Administrativa del Banco Intercontinental, S.A." ("Baninter") -- in place of the Liquidation Commission. Thus, the Amended Complaint fails to acknowledge either the 401-page Order of the Dominican court exonerating Alvarez Renta of the charges made against him here or the June 8, 2004 Order of the Dominican court requiring the Liquidation Commission to provisionally discontinue this action. This Court should not countenance Plaintiff's willful ignorance of the Orders entered by the Dominican court. The Amended Complaint is both improper under United States law and contrary to Dominican law. It should be dismissed or stricken and the action dismissed without prejudice before it does any further damage to Defendants.

### BACKGROUND

On or about April 23, 2004, Dr. Eduardo Jose Sanchez Ortiz, Judge of the Seventh Preliminary Criminal Court of the National District of the Dominican Republic, in a 401-page opinion, adjudicated and <u>dismissed</u> the charges filed by the Dominican banking authorities against Alvarez Renta arising from the failure of Banco Intercontinental, S.A. Moreover, at the behest of the Dominican banking authorities, the Judge expressly considered the same alleged schemes that form the basis of the claims against Alvarez Renta and Wadeville in this Court and dismissed charges of breach of trust, misrepresentation, fraud and money laundering against Alvarez Renta. The Judge's 401-page opinion described in detail evidence of the wide-

ranging fraud apparently committed by the principals of Baninter and expressly concluded, based on the documentary record and the testimony of more than fifty (50) witnesses, that Alvarez Renta was not a part of the alleged fraud.[1]  A copy of the Order of Determination and Denial of Motion (the "Order"), together with a certified translation thereof, was previously filed with the Court on May 27, 2004, as Exhibit A.

Based in part on the thorough and well-reasoned Order of the Judge exonerating Alvarez Renta in the Dominican Republic, Alvarez Renta and Wadeville moved to dismiss the original Complaint filed by the Liquidation Commission.  In addition to arguing that the doctrines of international comity and *forum non conveniens* warranted the dismissal of the action in deference to the proceedings in the Dominican Republic, Alvarez Renta and Wadeville also argued that the Liquidation Commission lacked standing, and this Court therefore lacked subject matter jurisdiction, to dispose of the claims of the Liquidation Commission.

After Alvarez Renta and Wadeville filed their motion to dismiss, but before the Liquidation Commission responded, another Dominican court spoke and ordered the Liquidation Commission "to provisionally discontinue" its case against Alvarez Renta and Wadeville.  See June 8, 2004 Order of the Court of First Instance of the National District of the Dominican Republic, at 23.  A copy of the June 8 Order, together with a certified translation thereof was previously filed with the Court on June 9, 2004.  The June 8 Order specifically questions the Liquidation Commission's "authori[ty] to file legal action[s] against third parties," such as

---

[1] The Order is presently on appeal in the Dominican Republic.

Alvarez Renta and Wadeville, and recognizes Alvarez Renta's "right to not be judged twice for the same action." June 8 Order at 21.

Rather than obey the June 8 Order, the Liquidation Commission caused its attorneys to file an "Amended Complaint" in the name of "Banco Intercontinental, S.A., duly represented by La Comision de Liquidacion Administrativa del Banco Intercontinental, S.A." The only putative "amendment" is the substitution of Baninter for the Liquidation Commission.   The Amended Complaint is otherwise identical to the original Complaint filed by the Liquidation Commission.

The Court should immediately put an end to Plaintiff's gamesmanship. As demonstrated below, the Liquidation Commission's attempted substitution of Baninter fails as a matter of law.   Because the Liquidation Commission lacked standing to sue in the first instance (which it now all but admits), it also lacks standing to amend the Complaint to substitute a new plaintiff.

Moreover, the Liquidation Commission's continued efforts to prosecute this action -- whether in its own name or by "duly representing" Baninter – are in direct violation of the June 8 Order of the Dominican court requiring that it "provisionally discontinue" this action. June 8 Order at 23.

Accordingly, for these reasons as well as for all of the reasons previously set forth in Alvarez Renta and Wadeville's motion to dismiss the original

Complaint,[2] the Court should dismiss this action without prejudice as to Alvarez Renta and Wadeville.

## ARGUMENT

I.    The Court Should Immediately Dismiss or Strike The
      Amended Complaint for Lack of Subject Matter Jurisdiction

In their motion to dismiss the original Complaint, Alvarez Renta and Wadeville argued that the Liquidation Commission lacked standing, and this Court lacked subject matter jurisdiction, to adjudicate this dispute.   In an apparent recognition of the merit of this argument, the Liquidation Commission has now filed an "Amended Complaint" naming Baninter "duly represented by" the Liquidation Commission as plaintiff in its stead.

This misguided effort to cure one of the many jurisdictional defects in the original Complaint fails as a matter of law.   As the Fifth Circuit stated in Summit Office Park, Inc. v. United States Steel Corp., 639 F.2d 1278 (5th Cir. 1981), in a decision which is still binding on this Court:

> [W]e hold only that where a plaintiff never had standing
> to assert a claim against the defendants, it does not have
> standing to amend the complaint and control the
> litigation by substituting new plaintiffs.

Id. at 1282.  See also Live Entertainment, Inc. v. Digex, Inc., 300 F.Supp. 2d 1273, 1279-80 (S.D. Fla. 2003) (holding that plaintiff who had no standing to bring action also had no standing to make a motion to substitute the real party in interest).

---

[2] Because the Amended Complaint is identical to the original Complaint (with the exception of the Plaintiff) (and so as not to unnecessarily burden the Court with voluminous filings), Alvarez Renta and Wadeville hereby adopt and incorporate by reference herein their motion to dismiss the original Complaint, filed May 27, 2004, together with the Appendix filed in support thereof.  A copy of the motion only is attached hereto as Exhibit A for the Court's convenience.

HOGAN & HARTSON L.L.P., IIII BRICKELL AVENUE, SUITE I900 • MIAMI, FL 33I3I • TEL. (305) 459-6500 • FAX (305) 459-6550

This clear and binding law is fatal to the Liquidation Commission's attempt to file an "Amended Complaint" in the name of Baninter. Having lacked standing to file the original Complaint, the Liquidation Commission also lacks standing to amend to substitute a new plaintiff.[3] The Amended Complaint must therefore be dismissed or stricken for this reason alone.

> II.    The Court Should Immediately Dismiss the
>        Amended Complaint in Deference to the
>        Order of the Dominican Court Requiring That
>        This Action Be Provisionally Discontinued

In its June 8 Order, the Dominican court required the members of the Liquidation Commission "to provisionally discontinue [this] action until such time as a definitive ruling is made" on Alvarez Renta's pending demand for declaratory relief in the Dominican Republic. June 8 Order at 23. The demand for declaratory relief, also previously filed with this Court together with a certified translation thereof (on June 15, 2004), requests, among other things, a declaration that the Liquidation Commission lacks standing to pursue this action both because it lacks a legal identity and because it lacks the authority to sue third parties in any event.

The demand for declaratory relief remains pending in the Dominican Republic. Accordingly, pursuant to the express terms of the June 8 Order, the members of the Liquidation Commission are required to provisionally discontinue this action.

The "Amended Complaint" filed in the name of Baninter "duly represented by" the Liquidation Commission is in flagrant violation of the June 8

---

[3] The defects in the Liquidation Commission's standing to sue are set forth in Alvarez Renta and Wadeville's motion to dismiss the original Complaint at pages 18-22.

Order.   The Liquidation Commission cannot avoid the June 8 Order by directly causing another entity – namely, Baninter – to pursue the very action that the Dominican court expressly ordered be discontinued.

Such gamesmanship and outright disrespect of another duly-constituted court should not be sanctioned by this Court.   For all of the reasons set forth here and in Alvarez Renta and Wadeville's motion to dismiss the original Complaint, the Court should dismiss or strike the Amended Complaint and dismiss this action without prejudice as to Alvarez Renta and Wadeville.[4]

---

[4] The reasons for dismissal, particularly on international comity grounds, are even stronger today than when Alvarez Renta and Wadeville filed their motion to dismiss a month ago.   First, the "Plaintiff" is now Baninter – the very entity that filed the criminal and civil proceedings in the Dominican Republic that were dismissed by Order of the Dominican court on April 23, 2004.   Second, another Dominican court has now ordered that these proceedings be discontinued. Thus, not only have the Dominican courts exercised their authority over this Dominican dispute, they have expressed their desire that this Court not do so. Indeed, it is difficult to imagine a set of circumstances in which dismissal on international comity grounds would be more appropriate.

HOGAN & HARTSON L.L.P., IIII BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

## CONCLUSION

For the foregoing reasons, the Court should grant this motion, dismiss or strike the Amended Complaint and dismiss this action without prejudice as to Alvarez Renta and Wadeville.

Respectfully submitted,

Parker D. Thomson, Esq.
Florida Bar Number: 081255
Laura Besvinick, Esq.
Florida Bar Number:  391158
Luca R. Bronzi, Esq.
Florida Bar Number:  015628
HOGAN & HARTSON L.L.P.
1111 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone:   (305) 459-6500
Facsimile:   (305) 459-6550

By:  _____
      Parker D. Thomson

*Attorneys for Defendants Luis Alvarez Renta and Wadeville Investments, Ltd.*

and

Anthony Joseph Barranco, Esq.
Florida Bar Number:  100472
Barranco, Kircher & Vogelsang, P.A.
150 West Flagler Street, Suite 1400
Miami, Florida 33130-1537
Telephone:   (305) 371-8575
Facsimile:   (305) 371-7021

*Attorneys for Defendant Luis Alvarez Renta*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served

via facsimile and U.S. Mail this _____day of June, 2004, to:

C. Thomas Tew, Esq.
Matias R. Dorta, Esq.
Tew Cardenas, L.L.P.
201 South Biscayne Blvd.
Miami Center - 26th Floor
Miami, Florida 33131-4336

By: _____

Parker D. Thomson

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 04-20727-CIV-MARTINEZ
(Magistrate Klein)

THE LIQUIDATION COMMISSION
OF BANCO INTERCONTINENTAL, S.A.

        Plaintiff,

v.

LUIS ALVAREZ RENTA, BANKINVEST S.A.,
INTEDUTY FREE, LTD. and
WADEVILLE INVESTMENTS, LTD.

        Defendants.

_____/

## DEFENDANTS LUIS ALVAREZ RENTA AND WADEVILLE INVESTMENTS, LTD.'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Rules 12(b)(1), and 12(b)(6), Fed.R.Civ.P., and the doctrines of *forum non conveniens* and international comity, defendants Luis Alvarez Renta ("Alvarez Renta") and Wadeville Investments, Ltd. ("Wadeville") hereby move this Court to enter an Order dismissing the action brought by The Liquidation Commission of Banco Intercontinental, S.A. (the "Liquidation Commission") without prejudice. For the reasons set forth below, the motion should be granted.

## INTRODUCTION

On or about April 23, 2004, Dr. Eduardo Jose Sanchez Ortiz, Judge of the Seventh Preliminary Criminal Court of the National District of the Dominican Republic, adjudicated and dismissed the charges filed by the Dominican banking authorities against Alvarez Renta arising from the failure of Banco Intercontinental,

S.A. ("Baninter").  In a 401-page opinion, the Judge simultaneously found cause to bind over Baninter's principals, Ramon Baez Figueroa and Marcos Baez Cocco, for trial on criminal charges and dismissed all claims against Alvarez Renta.  Moreover, at the behest of the Dominican banking authorities, the Judge expressly considered the same alleged schemes that form the basis of the Liquidation Commission's claims in this Court and dismissed charges of breach of trust, misrepresentation, fraud and money laundering against Alvarez Renta.  The Judge's 401-page opinion describes in detail evidence of the wide-ranging fraud apparently committed by Baez Figueroa and Baez Cocco at Baninter and expressly concludes, based on the documentary record and the testimony of more than fifty (50) witnesses, that Alvarez Renta was not a part of the alleged fraud.[1]  A copy of the Order of Determination and Denial of Motion (the "Order"), together with a certified translation thereof, is appended hereto as Exhibit A.

As demonstrated below, the thorough and well-reasoned Order of the Judge exonerating Alvarez Renta in the Dominican Republic is fatal to the claims of the Liquidation Commission in this Court.   Baninter (whose "rights and claims" the Liquidation Commission now purports to assert) first chose to file its complaint against Alvarez Renta in the Dominican Republic and the Judge dismissed it after a full and fair investigation in which Baninter had the opportunity to, and did, actively participate.   Under these circumstances, the doctrine of international comity, as interpreted by the Eleventh Circuit Court of Appeals, compels the immediate dismissal of this action without prejudice as against Alvarez Renta and Wadeville.

---

[1] The Order is presently on appeal in the Dominican Republic.

2

As if this were not reason enough to dismiss the claims of the Liquidation Commission, the Liquidation Commission also lacks standing to pursue this action based on the laws of the Dominican Republic. As set forth in greater detail below, the Liquidation Commission is not a legal entity empowered to bring this action in its own name. Moreover, Alvarez Renta and Wadeville are not among those persons or entities against whom Baninter (the proper party in interest) is authorized to assert criminal or civil claims. As a consequence, this Court lacks subject matter jurisdiction to adjudicate this dispute.

Finally, and as further described below, this dispute clearly belongs in the Dominican Republic based on the doctrines of *forum non conveniens* and international comity. The collapse of Baninter, one of the Dominican Republic's largest banks, is a matter of great significance in and to the Dominican Republic and the disputes relating to it are, and should continue to be, litigated there. Moreover, virtually all of the relevant witnesses and documents are in the Dominican Republic. Even the Liquidation Commission has admitted that the only victim of the alleged fraud was Baninter, a Dominican bank.

Plainly, this dispute is one for the courts of the Dominican Republic. The Dominican banking authorities, having been unsuccessful in pursuing their claims against Alvarez Renta in the Dominican Republic, should not be permitted to use this Court to re-prosecute their baseless allegations against Alvarez Renta and Wadeville in the United States. This action should therefore be dismissed without prejudice immediately.

3

## BACKGROUND

This is a federal RICO action (with a pendent Florida fraudulent transfer claim) brought by the Liquidation Commission for an alleged fraud committed solely against Baninter, a Dominican bank which collapsed in 2003 and is now in liquidation in the Dominican Republic.  The Liquidation Commission has sued Alvarez Renta, a dual citizen of the Dominican Republic and the United States, Bankinvest, a Dominican Republic company, and two British Virgin Islands companies, Interduty Free, Ltd. ("Interduty Free") and Wadeville, for their alleged participation in a conspiracy to defraud Baninter, resulting, according to the Complaint, in $34 million in damages to the bank.[2]  Notably, although specifically alleged to have "stole[n] funds" from Baninter and to have conspired with Alvarez Renta, Ramon Baez Figueroa, who is now facing criminal charges in the Dominican Republic for his role in Baninter's failure (unlike Alvarez Renta who has been exonerated), is <u>not</u> named as a defendant in this action.

The Complaint focuses on two series of transactions.   The first, denominated "The United States Letter of Credit and Loan Scheme" by the Liquidation Commission, involves a series of loans made by several United States banks (all of which were <u>repaid</u> <u>in</u> <u>full</u>) to Bankinvest and/or Interduty Free which were guaranteed by letters of credit issued by Baninter, Complaint, ¶ 31(a)-(c), (e)-(j),

---

[2] Defendants Bankinvest and Interduty Free, have not responded to the Complaint and the clerk has entered defaults against them.  As Alvarez Renta has previously advised the Court, the Liquidation Commission improperly purported to serve Bankinvest at his offices in the Dominican Republic, resulting in Alvarez Renta filing a challenge to the purported service of process in the Dominican Republic.  In fact, as expressly found by the investigating Judge in the Dominican Republic, Alvarez Renta has <u>no</u> interest in defendant Bankinvest (which apparently owns defendant Interduty Free).

4

(l)-(p), (t)-(u), and several loans allegedly made directly by Baninter to Bankinvest "through" wires to a Bankinvest account at a United States bank. Complaint, ¶ 31(d), (k), (q)-(s). According to the Complaint, none of the loans were repaid by Bankinvest or Interduty Free – the Baninter letters of credit were drawn down to pay the United States bank loans, totaling $16.4 million, and the Baninter loans, totaling $7.7 million, were simply never repaid.

The second series of transactions, denominated "The Scheme to Transfer Assets to Wadeville's BankAtlantic Account in Miami" by the Liquidation Commission, involves a series of checks drawn on Bankinvest's Baninter account which were allegedly delivered to a Dominican money exchange agency in March 2003, changed into United States dollars, and wired from the Dominican Republic to Wadeville's account at BankAtlantic, totaling $10.5 million. Complaint, ¶¶ 38 & 39. According to the Liquidation Commission's Civil RICO Case Statement, the only "victim" of these alleged schemes was Baninter itself. See Civil RICO Case Statement, ¶ 4 ("The victim of the Defendants' racketeering activity was Baninter."). The United States banks are not alleged to have been damaged in any way, and the Liquidation Commission does not claim that any other person or entity in the United States suffered any harm from the alleged schemes.

Based on these alleged "schemes," the Liquidation Commission has sued Alvarez Renta and Wadeville for alleged violations of the federal RICO Act,

specifically 18 U.S.C. § 1962(d) (conspiracy) and 18 U.S.C. § 1962(a) (money laundering), as well as for fraudulent transfers in violation of Fla. Stat. § 726.102.[3]

For the reasons set forth below, the Complaint should be dismissed without prejudice as to Alvarez Renta and Wadeville. There are five reasons. <u>First</u>, Judge Sanchez Ortiz in the Dominican Republic has already investigated and considered the facts and circumstances which form the basis of the Liquidation Commission's claims in this action and exonerated Alvarez Renta. Based on well-established principles of international comity, this Court should hold that the Order exonerating Alvarez Renta in the Dominican Republic is entitled to deference and that this action should therefore be dismissed without prejudice.

<u>Second</u>, the Liquidation Commission lacks standing, and this Court therefore lacks subject matter jurisdiction, to adjudicate this action. As a matter of law in the Dominican Republic, the Liquidation Commission is not a legal entity authorized by law to sue in its own name. Dominican law further limits the persons and entities against whom criminal or civil claims may be asserted by the bank in liquidation to administrators, directors and officials of the bank. Neither Alvarez Renta nor Wadeville was or is an administrator, director or official of Baninter and the claims against them are therefore improper for this reason as well.

<u>Third</u>, the Court lacks subject matter jurisdiction for the additional reason that the Liquidation Commission has failed to allege a factual basis for the extraterritorial application of the federal RICO Act. The "effects" of the alleged fraud

---

[3] Wadeville is <u>not</u> sued for the alleged violations of 18 U.S.C. § 1962(a).

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

occurred exclusively in the Dominican Republic and the "conduct" alleged to have been fraudulent likewise occurred there.

Fourth and finally, based on principles of *forum non conveniens* and international comity, the Court should dismiss this action without prejudice in deference to the many proceedings already pending in the Dominican Republic relating to the failure of Baninter. The Dominican Republic has a strong local interest in resolving the disputes related to Baninter's collapse and is in the complicated process of doing exactly that right now. The relevant documents and witnesses are located primarily in the Dominican Republic; the alleged harm to Baninter occurred in the Dominican Republic (as did the alleged fraud); and the law of the Dominican Republic will govern. Under these circumstances, the balance of private and public interest factors plainly weighs in favor of dismissing this action without prejudice.

## ARGUMENT

I.  The Court Should Dismiss This Action Based on
    International Comity in Deference to the Order
    Exonerating Alvarez Renta in the Dominican Republic

This Court should conclude that it lacks subject matter jurisdiction to adjudicate this dispute. See infra at II. Even if the Court were to conclude that it possessed subject matter jurisdiction, however, it would still need to determine whether it "should exercise its jurisdiction where parallel proceedings are ongoing in a foreign nation and a judgment has been reached on the merits in the litigation abroad." Turner Entm't Co. v. Degeto Film Gmbh, 25 F.3d 1512, 1518 (11th Cir. 1994). The Eleventh Circuit addressed this precise issue in Turner and held that where, as

7

here, a later-filed action is instituted in a United States court and the duly-constituted court of a foreign nation has already reached a judgment on the merits of the parties' dispute, the doctrine of international comity compels the court to defer to that judgment and to stay the United States action. For the reasons set forth below, this Court should follow Turner and dismiss this action without prejudice as against Alvarez Renta and Wadeville.

The Eleventh Circuit first "considered the question of 'international abstention'" in Turner. Id. at 1518. After canvassing the law of other circuits, the Turner Court concluded that courts "sought to fashion principles that will promote three readily identifiable goals in the area of concurrent international jurisdiction:"

> (1) a proper level of respect for the acts of our fellow sovereign nations -- a rather vague concept referred to in American jurisprudence as international comity; (2) fairness to litigants; and (3) efficient use of scarce judicial resources.

Id. The Court then turned to a consideration of each one of the three goals.

1.    International Comity.    The Turner Court noted that in the international abstention context, the meaning of international comity was derived from Hilton v. Guyot, 159 U.S. 113 (1895), in which the United States Supreme Court held that a foreign judgment rendered by a competent court "should be held conclusive upon the merits . . . unless some special ground is shown . . . ." 159 U.S. at 206.

General comity concerns include:

> (1) whether the judgment was rendered via fraud, (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence, and (3) whether the foreign judgment is prejudicial, in the

8

> sense of violating American public policy because it is
> repugnant to fundamental principles of what is decent and
> just.

Turner, 25 F.3d at 1519 (citations omitted).

"Also relevant to considerations of international comity are the relative strengths of the American and [foreign country] interests." Id. at 1521 (citations omitted).

2.    Fairness.  The second goal noted by the Turner Court was fairness. Relevant fairness considerations include: (1) the order in which the United States and foreign country proceedings were filed, (2) the convenience of the respective forums, and (3) the possibility of prejudice resulting from the entry of a stay. Id. at 1521-22.

3.    Judicial Resources.  The third and final goal advanced by the Turner court was the efficient use of scarce judicial resources. "Criteria relevant to efficiency include (1) the inconvenience of the federal forum, (2) the desirability of avoiding piecemeal litigation, (3) whether the actions have parties and issues in common and (4) whether the alternative forum is likely to render a prompt disposition. Id. at 1522-23 (citations omitted).

Following Turner, the Eleventh Circuit has held that the Turner principles even apply where parallel foreign country proceedings are pending but have not yet resulted in a judgment. See Posner v. Essex Ins. Co. Ltd., 178 F.3d 1209, 1222-24 (11th Cir. 1999) (applying Turner principles to defer on international comity grounds to pending Bermuda proceedings).

Here, all of the <u>Turner</u> principles clearly counsel in favor of deference to the Order exonerating Alvarez Renta already entered by the Judge in the Dominican Republic.

1. <u>International Comity</u>.   The Liquidation Commission does not and cannot allege that the Order exonerating Alvarez Renta was procured by fraud or rendered by a court that was not utilizing "civilized" proceedings.   Nor can the Liquidation Commission colorably claim that the Order exonerating Alvarez Renta violates American public policy.   There are many reasons, but foremost among them is the Order itself.[4]

The 401-page Order of the investigating Judge in the Dominican Republic is the result of a 10-month investigation into the criminal complaints filed by the Central Bank of the Dominican Republic, the Office of the Superintendent of Banks of the Dominican Republic and Baninter (collectively, the "Dominican banking authorities") against, among others, Ramon Baez Figueroa, Marcos Baez Cocco and Luis Alvarez Renta.   Copies of the criminal complaints, together with certified translations thereof, are appended hereto as Exhibit B.   These complaints charged the defendants with multiple violations of the Criminal Code of the Dominican Republic, including but not limited to breach of trust, misrepresentation, fraud and money laundering, in connection with the financial collapse and failure of Baninter.

---

[4] The Court may properly consider the Order exonerating Alvarez Renta and the pleadings relating thereto on this motion to dismiss.  See Cope v. Bankamerica Hous. Serv., Inc., 2000 WL 1639590, *4 (M.D. Ala. 2000), citing Concordia v. Bendskvic, 693 F.2d 1073, 1075 (11th Cir. 1982) (holding that court may consider copies of pleadings and orders on motion to dismiss without converting motion to dismiss into motion for summary judgment).

The Order specifically sets forth the voluminous documentary evidence received and considered by the Judge during the 10-month investigation. A summary of this evidence is set forth at pages 2-88 of the Order. The Order also specifically sets forth a summary of the testimonial evidence received and considered by the investigating Judge. More than fifty (50) witnesses were questioned, including representatives of the Dominican banking authorities, the defendants, and employees of Baninter with knowledge of the alleged fraud. The testimony is extensive and it is summarized at pages 90-347 of the Order. Based on all of this evidence and a consideration of the applicable law, the Judge concluded that the parties responsible for the massive fraud at Baninter were Baez Cocco and Baez Figueroa, who directed Baninter's operations in their respective capacities as Executive Vice President of Operations and President of the bank. Order at 364.

In contrast, the Judge found that Alvarez Renta "was not an employee or an officer of Baninter" and that "he had no knowledge regarding the irregular operations carried internally at Baninter, nor did he know about the confidential memoranda" sent by Baez Cocco. Order at 386. The Judge further found "the actions of Mr. Luis Alvarez Renta were carried out in accordance with the responsibilities provided for in . . . the Bankinvest sale contract . . . and his duties were limited." Id. The Judge thus concluded:

> **WHEREAS**: *According to what Mr. Luis Alvarez Renta has stated in this preliminary investigation, he never worked at Baninter nor did he have access to statements of bank accounts, accounting records and documents that would enable him to be a perpetrator of the double accounting that existed at Baninter, nor of what is called the Baninter*

11

*"hole," which led to the financial disaster at the institution in reference, as indicated by the plaintiffs and complainants just as we have stated in the reasons given above. Nor is there any evidence of a violation of articles 147, 408, 59 and 60 of the Criminal Code since <u>there is no evidence of falsification of documents or abuse of trust or complicity as regulated by the legal provisions because he was not an official or employee of Baninter nor of Mr. Ramon Baez Figueroa</u>. Rather, he acted as a professional by virtue of a contract as an attorney-in-fact. <u>He did not have knowledge of what was occurring and therefore he cannot be charged with a violation</u> of articles 147, 408, 49 and 60 of the Dominican Criminal Code; Article 80, paragraphs D and E of Law No. 183-02; Articles 3, paragraphs A and C, Article 4, the paragraph of Article 19 of Law 72-02; and <u>therefore it is appropriate to rule to dismiss in his favor</u>, as shall be set forth in the dispositive section of this decision.*

Order at 387-88 (emphasis added).

As this brief review makes clear, the Order exonerating Alvarez Renta plainly meets the standards set forth in <u>Turner</u> and <u>Hilton</u>. There is no evidence of fraud or any lack of process inuring to the detriment of the Dominican banking authorities. To the contrary, the substantial evidence gathered over the course of the 10-month investigation, together with the investigating Judge's thoughtful analysis of it, evidences the competence of the Dominican court and the fairness of its procedures to the Dominican banking authorities.

This Court may also take note of the fact that the Dominican banking authorities – including Baninter, whose "rights and claims" the Liquidation Commission purports to assert here – chose to invoke the jurisdiction of the Dominican Republic first. Where, as here, a litigant invokes a foreign forum, he will not be heard to question its competence. See Alfadda v. Fenn, 966 F. Supp. 1317, 1326

12

(S.D.N.Y. 1997) (noting that plaintiffs who selected French forum that decided the issues against them could not question the French court's jurisdiction).

Moreover, as complainants in the Dominican proceedings, the Dominican banking authorities – again, including Baninter – were permitted to participate fully in the investigation conducted by the Judge. Id. at 1322 (noting that parties who file criminal complaints in French court are permitted to participate in criminal proceedings); see also Herbstein v. Bruetman, 799 F. Supp. 1450, 1454 (S.D.N.Y. 1992) (holding temporary dismissal of criminal/civil investigation by Argentine court would not be accorded preclusive effect where plaintiff was not a party to the investigation and was thus unable "practically to attempt to direct the investigation").

In addition, federal and Florida courts have repeatedly recognized the competence and procedural fairness of Dominican courts. See, e.g., Jose Armando Bermudez & Co. v. Bermudez Int'l, 2000 WL 1225792, *7 (S.D.N.Y. 2000) (collecting cases recognizing adequacy of Dominican Republic as forum); Mursia Invs. Corp. v. Industria Cartonera Dominicana, 847 So. 2d 1064, 1067 (Fla. 3d DCA 2003) (recognizing adequacy of Dominican Republic as forum).

The relative strength of United States and Dominican interests in the proceedings also supports the application of international comity. Here, as evidenced by the Order, the dispute involves the failure of Baninter, a Dominican bank, described by the Liquidation Commission as the only victim of the alleged fraud. The relevant witnesses (who have already testified in the Dominican Republic) are Dominican and Dominican law (as applied by the investigating Judge) governs. In

13

contrast, the Liquidation Commission has failed to identify any United States interest in the controversy.  See Turner, 25 F.3d at 1521.

        2.  Fairness.  Fairness considerations also militate strongly in favor of deference to the Order exonerating Alvarez Renta and the ongoing proceedings in the Dominican Republic.  The Dominican banking authorities filed the criminal complaint against Alvarez Renta in June 2003, nine (9) months before the Liquidation Commission filed this action and after the investigating Judge had already engaged in substantial efforts.  Id. at 1522 (collecting cases in which United States litigation is stayed in deference to foreign actions filed months earlier).

        The Dominican Republic is also a much more convenient forum for litigation of the dispute.  All of the documentary evidence gathered by the Judge in the Dominican Republic is in the Dominican Republic as are most, if not all, of the witnesses with knowledge relevant to this dispute.  The "significantly greater" Dominican interest in the litigation "also supports the more general notion that concerns of fairness favor" the Dominican Republic.  Id.

        Lastly, the dismissal of this action without prejudice in deference to the Order and continuing proceedings in the Dominican Republic will not prejudice any party.  The Dominican banking authorities have appealed the Order and that appeal is pending.  Thus, abstention to permit the Dominican legal system to run its course will not "foreclose any chance for [the Liquidation Commission] to obtain a fair and just result."  Id.

HOGAN & HARTSON L.L.P. • 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

3. <u>Judicial Resources</u>. The final <u>Turner</u> factor also favors abstention in this case. The greater convenience of the Dominican forum has been discussed. Deference to the Dominican forum would also avoid piecemeal litigation. It makes no sense for the Liquidation Commission to pursue Baninter's claims against Alvarez Renta in this Court while the appeal of the Order exonerating Alvarez Renta and all of Baninter's claims against Alvarez Renta's alleged co-conspirators proceed in the Dominican Republic.

Moreover, a comparison of the Order exonerating Alvarez Renta and the allegations of the Complaint makes clear that the claims against Alvarez Renta in both forums are premised on the same facts and circumstances. As set forth above, the claims of the Liquidation Commission in this Court are premised on two alleged fraudulent schemes: the so-called "United States Letter of Credit and Loan Scheme," involving twenty-one (21) specified transactions with United States banks, and the so-called "Scheme to Transfer Assets to Wadeville's BankAtlantic Accounts in Miami," involving seven (7) checks allegedly drawn on Bankinvest's Baninter account which were then delivered to a Dominican currency exchange agency, changed into dollars, and wired from the Dominican Republic to Wadeville in the United States.

A careful analysis of the Order exonerating Alvarez Renta shows that the Judge was presented with the evidence relating to both of these alleged schemes and concluded that Alvarez Renta did not know about the fraud apparently being perpetrated by the principals of Baninter. At least eighteen (18) of the twenty-one

15

(21) loans comprising the so-called "United States Letter of Credit and Loan Scheme" are specifically identified in the Order. Compare Order at 18, 19, 21, 22, 23, 25, 27, 28, 29, 30 & 33 with Complaint, ¶ 31 (a) – (u). The Judge also specifically referred to the loans in his findings in favor of Alvarez Renta:

> *Rather, his duties were within Bankinvest, which was a company that acted on behalf of Baninter, as a client of Baninter, and he had signature authority on that account to pay and comply with the debt payment schedule, the only duty entrusted to him. The vast majority of the international debts, that is, to banks or suppliers abroad, were guaranteed by Baninter letters of credit, which represented the bank's guaranty, which is evidence that his duties fall within the sphere of civil law.*

Order at 386.

The currency exchange transactions are also specifically addressed in the Order. Of the seven (7) checks identified in the Complaint, at least (5) are specifically referenced in the Order. Compare Order at ¶ 38, 40 & 41 with Complaint at ¶ 39 (a) – (g). The Judge also specifically discussed the improper use of currency exchange agencies in his findings against the principals of Baninter. Order at 372 ("The integration or justification of the origin of the dirty money through apparently legitimate sources, which in the case of cash is seen through Alta Financial and the currency exchange agencies, since these latter accept money in one currency and they convert it to another, which clouds the origin of the funds.").

The claims based on these facts and circumstances are also the same in both forums. In the Dominican Republic, Alvarez Renta was accused of breach of

trust, misrepresentation, fraud and money laundering.  <u>See</u> Exhibit B.  Here, the Liquidation Commission has likewise charged Alvarez Renta and Wadeville with predicate acts of wire fraud, transportation of stolen goods and money laundering. <u>See</u>, <u>e.g.</u>, Complaint, ¶ 45.  Thus, the specific claims asserted by the Liquidation Commission against Alvarez Renta and Wadeville under United States law directly parallel the charges against Alvarez Renta brought by the Dominican banking authorities under Dominican law.[5]

Finally, the Dominican forum "would seem as likely as the American forum to render a prompt disposition."  <u>Turner</u>, 25 F.3d at 1522.  Already, the Dominican "litigation has moved much farther along than the American action."  <u>Id.</u> Before entering the Order exonerating Alvarez Renta, the investigating Judge gathered voluminous documentary evidence and heard testimony from more than fifty (50) witnesses.  This case, in contrast, is at its inception.

It is obvious what this Court should do.  At the behest of the same Dominican banking authorities that authorized the filing of this lawsuit, an investigating Judge in the Dominican Republic gathered voluminous documentary evidence and questioned more than fifty (50) witnesses in order to determine whether Alvarez Renta (and others) were guilty of the claims the Liquidation

---

[5] The fact that no federal RICO Act claims were asserted in the Dominican Republic is irrelevant. The disposition of fraud claims has been held to bar the subsequent assertion of federal RICO Act claims arising from the same facts and circumstances. See <u>Alfadda</u>, 966 F. Supp. at 1317 (holding that French judgment rejecting fraud claims barred United States securities fraud and RICO claims); <u>see also</u> <u>Pelletier v. Zweifel</u>, 921 F.2d 1465, 1500-02 (11th Cir. 1991) (holding that state court judgment rejecting breach of contract and fraud claims barred RICO claims based on same facts and circumstances); <u>Lary v. Ansari</u>, 817 F.2d 1521, 1523-24 (11th Cir. 1987) (holding that state court judgment rejecting fraud claims barred RICO claims based on same facts and circumstances).

Commission now seeks to pursue against Alvarez Renta and Wadeville in this Court. After a 10-month investigation, the Judge cleared Alvarez Renta of all charges. As a matter of international comity, fairness and judicial economy, neither Alvarez Renta nor this Court should have to repeat the work already done by the Dominican court that exonerated Alvarez Renta. The Court should therefore dismiss this action without prejudice.

II.    The Court Should Dismiss The Action For Lack Of
       Subject Matter Jurisdiction Because The Liquidation
       <u>Commission Lacks Standing</u>

A.    The Liquidation Commission Bears the Burden of Demonstrating
      <u>that the Court Possesses Subject Matter Jurisdiction.</u>

"The burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction." <u>Cedars-Sinai Med. Ctr. v. Watkins</u>, 11 F.3d 1573, 1583 (Fed. Cir. 1993), <u>cert. denied</u>, <u>Cedars-Sinai Med. Ctr. v. O'Leary</u>, 512 U.S. 1235 (1994), <u>citing</u> <u>KVOS, Inc. v. Associated Press</u>, 299 U.S. 269, 278 (1936). "When federal jurisdiction is challenged, the plaintiff bears the burden of showing why the case should not be dismissed." <u>Mills v. State of Kan., Eighth Judicial District</u>, 994 F. Supp. 1356, 1357-58 (D. Kan. 1998). If the plaintiff fails to carry its burden, dismissal is "mandatory." <u>United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)</u>.

A Rule 12(b)(1) motion may challenge the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations – what is sometimes referred to as a "facial" attack – or it may challenge the factual basis for the court's subject matter jurisdiction. Where, as here, a "factual" attack is mounted, "the

18

allegations in the complaint are not controlling, . . . only uncontroverted factual allegations are accepted as true, . . . [and] [a]ll other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." Cedars-Sinai, 11 F.3d at 1583-84 (citations omitted). "When addressing such a factual challenge, a district court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" Moore v. Navy Public Works Ctr., 2001 WL 34104926, *1 (N.D. Fla. 2001), quoting Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (internal citations omitted).

Lack of standing, as is alleged here, deprives the Court of subject matter jurisdiction and mandates the immediate dismissal of the action. Id., citing Galindo-Del Valle v. Attorney Gen., 213 F.3d 594, 598 n.2 (11th Cir. 2000).

**B.   The Liquidation Commission Lacks Standing Because It Is Not a Legal Entity With the Authority to Sue**

In the Complaint, the Liquidation Commission alleges that it is "a legal entity appointed under the laws of the Dominican Republic by that country's monetary board pursuant to a request of the Dominican Republic's Office of the Superintendency of Banks." Complaint, ¶ 3. The Liquidation Commission further asserts that it "took possession of all assets of Baninter, . . . and it is authorized to collect all debts and exercise any rights and claims to which Baninter may be entitled." Id.

In fact, the Liquidation Commission is not a legal entity with the authority to sue under the laws of the Dominican Republic. As set forth in the Affidavit of Professor Keith Rosenn, appended hereto as Exhibit C, the Liquidation

19

Commission is defined by the Monetary and Financial Law of the Dominican Republic. Based on this law, the Liquidation Commission is authorized to act on behalf of Baninter, and to bring appropriate actions in the name of Baninter, which continues to exist as a legal entity.  However, the Liquidation Commission is <u>not</u> authorized to bring an action in its own name, as it purports to do in this Court. <u>Id.</u> at ¶¶ 28-32.

Alvarez Renta has raised this issue in proceedings now pending in the Dominican Republic in which he seeks, among other things, a declaration that the Liquidation Commission lacks standing to pursue its claims in this Court. Copies of these proceedings are appended hereto as Exhibit D.  In response, the members of the Liquidation Commission have claimed that this action was initiated by <u>Baninter</u> which, although in liquidation, retains its legal identity.   A copy of the response is appended hereto as Exhibit E.

The Power of Attorney, pursuant to which the Tew Cardenas law firm was authorized to file this lawsuit, lends further support to the conclusion that <u>Baninter</u>, and not the Liquidation Commission, is the proper party in interest in this action.  A copy of the Power of Attorney, together with a certified translation thereof, is appended hereto as Exhibit F.   The Power of Attorney was granted by the Dominican banking authorities – the Central Bank, the Superintendent of Banks and Baninter (as represented by the Liquidation Commission) – and <u>not</u> the Liquidation Commission.)  In short, Tew Cardenas was authorized to file this lawsuit, but in the name of Baninter, <u>not</u> in the name of the Liquidation Commission.

As a cursory review of the Complaint reveals, Baninter, although it is the proper party in interest, is <u>not</u> the plaintiff in this action. Rather, the plaintiff is the Liquidation Commission, which lacks the legal identity necessary to sue in its own name as a matter of Dominican law. The Liquidation Commission therefore lacks standing and the Complaint should accordingly be dismissed for lack of subject matter jurisdiction.

C.   The Liquidation Commission Lacks Standing Because Alvarez Renta and Wadeville Were Not Administrators, <u>Directors or Employees of Baninter</u>

As set forth above, the Liquidation Commission, because it lacks a legal identity, has no authority to sue in its own name, as it purports to do here, but may only represent Baninter in suits brought in the name of the bank. Under the Monetary and Financial Law of the Dominican Republic, however, even that capacity is limited. <u>See</u> Rosenn Affidavit at ¶ 27. The law permits the Liquidation Commission, acting in the name of Baninter, to bring criminal or civil claims <u>only</u> against administrators, directors and officials of the bank in liquidation. It thus becomes the burden of the Liquidation Commission (or, more properly, Baninter) to demonstrate that Alvarez Renta and Wadeville were "administrators, directors or officials" of Baninter. The Liquidation Commission does not, and cannot, carry this burden.

In the Complaint, the Liquidation Commission alleges only that "Alvarez Renta was a business consultant for Baninter," Complaint, ¶ 16, and that Wadeville was "one of his . . . companies," Complaint, ¶ 37. Thus, based solely on the allegations

21

of the Complaint, the claims of the Liquidation Commission must be dismissed for lack of standing.

The factual record lends further support to this conclusion. As the investigating Judge in the Dominican Republic found, Alvarez Renta "was not an official or employee of Baninter." Order at 388. Wadeville, alleged only to be "one of [Alvarez Renta's] companies," likewise filled no position at Baninter.

Because both Alvarez Renta and Wadeville are third parties, and not administrators, directors or officials of Baninter, the Liquidation Commission lacks the statutory authority to pursue Baninter's criminal or civil claims against them. The Liquidation Commission therefore lacks standing and the Complaint should accordingly be dismissed for lack of subject matter jurisdiction.

III.    The Court Lacks Subject Matter Jurisdiction to Adjudicate the Liquidation Commission's Federal RICO Act Claims Because the Wrongful Conduct And Harmful Effects of Which It Complains Did Not Occur in the United States

The Liquidation Commission asserts federal RICO Act claims against Alvarez Renta and Wadeville. In Count I, the Liquidation Commission alleges that Alvarez Renta and Wadeville conspired with Baez Figueroa and others to violate 18 U.S.C. § 1962(d) by conducting and participating in the affairs of the "Baninter enterprise" through a pattern of racketeering activity. In Count II, the Liquidation Commission alleges that Alvarez Renta violated 18 U.S.C. § 1962(a) by using and investing income generated from racketeering activities in the operation of defendant Bankinvest. In Count III, the Commission alleges that Alvarez Renta violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a).

22

In assessing its subject matter jurisdiction, the first question the Court must address is whether the federal RICO Act should apply extraterritorially to the facts as alleged in the Complaint. The Act itself is silent as to its extraterritorial application. See North South Finance Corp. v. Al-Turki, 100 F.3d 1046, 1051 (2d. Cir. 1996); Alfadda, 966 F. Supp. at 1335. The Court must therefore "ascertain whether the Congress would have intended" that the federal courts be concerned with the sort of international controversy here alleged. North South, 100 F.3d at 1051 (citations omitted).

For the most part, courts called upon to assess the extraterritorial reach of RICO have applied the alternative "conduct" and "effects" approaches originally developed to measure the extraterritorial reach of the United States' securities and antitrust laws.[6] North South, 100 F.3d at 1051-52. "[O]ne approach focuses on the domestic conduct in question, and the other focuses on the domestic effects resulting from the transaction at issue." Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 665 (7th Cir. 1998).

"When focusing on the effects, the courts seek to determine whether actions 'occurring in foreign countries ha[ve] caused foreseeable and substantial harm to interests in the United States.'" Id. (citations omitted). "Transactions with only remote and indirect effects in the United States do not qualify as substantial." North

---

[6] The presumed applicability of the alternative "conduct" and "effects" approaches has been questioned by some courts. In North South, for example, the Second Circuit questioned whether the "conduct" approach should govern in cases involving the extraterritorial application of RICO. The Court noted that the "effects-oriented approach" might be "more appropriate," particularly given RICO's treble damages provision, "which heightens concerns about international comity and foreign enforcement." North South, 100 F.3d at 1052.

South, 100 F.3d at 1051 (citations omitted). Accord U.S. v. Noriega, 746 F. Supp. 1506, 1516-17 (S.D. Fla. 1990), aff'd, 117 F.3d 1206 (11th Cir. 1997) (applying RICO to extraterritorial narcotics activities producing effects in the United States).

The "conduct" approach, in contrast, "concentrates upon the relative importance of activities within the United States to the success of the alleged scheme to defraud." Butte Mining PLC v. Smith, 876 F. Supp. 1153, 1164-65 (D. Mont. 1995), aff'd, 76 F.3d 287 (9th Cir. 1996). Under the "conduct" approach, "[m]ere preparatory activities, and conduct far removed from the consummation of the fraud, will not suffice to establish jurisdiction." North South, 100 F.3d at 1051, quoting Psimenos v. E.F. Hutton & Co., 722 F.2d 1041, 1046 (2d Cir. 1983). "Only where conduct 'within the United States directly caused'" plaintiff's loss will the court possess subject matter jurisdiction. Id. (internal citations omitted).

Here, the Liquidation Commission has attempted to create a nexus with the United States by claiming that funds allegedly misappropriated from Baninter in the Dominican Republic either were used to repay loans from United States banks to defendants Bankinvest and/or Interduty Free or were paid to the United States account of defendant Wadeville. All of the United States banks were repaid in full, however, and the only "victim" of the alleged fraudulent schemes, according to the Liquidation Commission, was Baninter, the Dominican bank now in liquidation in the Dominican Republic. Thus, the Liquidation Commission does not even purport to identify any United States' "effects" upon which to premise extraterritorial application of the federal RICO Act.

24

The Liquidation Commission also cannot satisfy the "conduct" approach. The wrongdoing of which the Liquidation Commission complains all occurred in the Dominican Republic where moneys were allegedly misappropriated from Baninter through a series of sham loan transactions. The fact that the moneys that were allegedly stolen were either used to repay bank loans in the United States (which are not alleged to have been fraudulent in and of themselves) or deposited to a United States account is insufficient standing alone to support United States jurisdiction.

IV.    The Court Should Dismiss the Claims Against Alvarez
       Renta Based on the Doctrine of *Forum Non Conveniens*

In the alternative, the Court should dismiss the Complaint as against Alvarez Renta and Wadeville based on the doctrine of *forum non conveniens*. The doctrine of *forum non conveniens* permits the Court to select for disposition "only those cases where contacts with the American forum predominate." Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1519 n.10 (11th Cir. 1985) (emphasis added). The application of the doctrine involves several steps. First, "the court must establish whether an adequate alternative forum exists." Chierchia v. Treasure Cay Servs., 738 F. Supp. 1386, 1387-88 (S.D. Fla. 1990), quoting C.A. La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983). Second, "the trial judge must consider all relevant factors of *private* interest." Id. Third, if the Court finds the balance of the private factors to be in or near equipoise, the Court "must then determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum." Id. Finally, if the trial judge determines that the balance

MORGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1800 ; MIAMI, FL 33131 ; TEL. (305) 459-6500 • FAX (305) 459-6550

favors the foreign forum, he "must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice." Id.

A.      The Dominican Republic Offers an Adequate Alternative Forum.

Initially, the Court must determine whether there exists an adequate alternative forum for the subject matter of the dispute. C.A. La Seguridad, 707 F.2d at 1307. "[T]he burden of establishing whether an alternative forum exists is not a heavy one." Banco Latino v. Gomez Lopez, 17 F. Supp. 2d 1327, 1331 (S.D. Fla. 1998). "Ordinarily, this requirement will be satisfied where the defendant is amenable to process in the other jurisdiction." Id. (citation omitted). Here, Alvarez Renta is a dual citizen of the Dominican Republic and the United States and is plainly amenable to service of process in the Dominican Republic. Wadeville, a BVI company, has also agreed to accept service of process in the Dominican Republic.

It is only in the "rare" circumstance that the alternative forum is so "clearly inadequate . . . that it is no remedy at all" that the court may conclude that dismissal would not be in the interests of justice. Id. The law in the alternative forum may be less favorable to plaintiff and comparable procedural safeguards may be lacking. Still, the alternative forum may be considered adequate for purposes of *forum non conveniens.* Id. Thus, the Eleventh Circuit has held that a plaintiff's inability to assert a federal RICO Act claim in the alternative forum will not bar a *forum non conveniens* dismissal where it is otherwise appropriate. Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 952 (11th Cir. 1997).

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 · MIAMI, FL 33131 · TEL (305) 459-6500 · FAX (305) 459-6550

Challenges to the adequacy of the alternative forum based on the alleged corruption of the forum have also been rejected by the courts. Banco Latino, 17 F. Supp. 2d at 1331 (citation omitted). Thus, in Banco Latino, this Court rejected efforts by Venezuelan banking authorities to adjudicate in the United States a dispute relating to Venezuelan banks and companies in which citizens of Venezuela were both the victims of the alleged fraud and the alleged perpetrators. The same reasoning compels the dismissal of this action on *forum non conveniens* grounds.

Lastly, the Court may note that federal and Florida courts have routinely recognized the adequacy of the Dominican Republic as an alternative forum. See supra at p. 13.

B.    The Private Interest Factors Weigh in Favor of Dismissal.

Although a plaintiff's choice of forum is generally entitled to respect, a foreign plaintiff's choice is accorded much less deference. Republic of Panama, 119 F.3d at 952; Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424, 1430 (11th Cir. 1996). "A plaintiff who chooses a foreign forum substantially undercuts the presumption his choice is reasonable: '[b]ecause the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.'" C.A. La Seguridad, 707 F.2d at 1307, quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981) (footnote omitted).

This is particularly true where, as here, the "private interest" factors weigh in favor of dismissal. The "private interest" factors include: (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process for the

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

attendance of unwilling witnesses, and the cost of obtaining the attendance of willing witnesses; (iii) the possibility of viewing the premises; and (iv) the other practical factors that may make a trial easier, more expeditious and less expensive. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

Here, most, if not all, of the relevant documents and witnesses are located in the Dominican Republic where the banking transactions at issue occurred. See Order at 2-88, 90-347. Baninter is in the Dominican Republic as are its books and records, which will presumably form a substantial portion of the proof in this case. Baninter personnel, most particularly, Baez Figueroa and Baez Cocco, are also located in the Dominican Republic. (Indeed, we understand that Baez Figueroa, who remains subject to criminal charges related to Baninter, cannot leave the Dominican Republic absent special authorization.)

Moreover, as previously noted, the Judge in the Dominican Republic has already concluded an extensive investigation of the same alleged fraud claims and exonerated Alvarez Renta. The Judge questioned in excess of fifty (50) witnesses and most, if not all, of them reside in the Dominican Republic. See Order at 90-347. Moreover, the voluminous and highly relevant record of the Judge's investigation is likewise located in the Dominican Republic, further adding to the balance of interests favoring the Dominican forum. See Ford v. Brown, 319 F.3d 1302, 1308 (11th Cir. 2003) (dismissing action on *forum non conveniens* grounds where documents related to investigation located abroad).[7]

---

[7] The Court may also consider the fact that the Dominican Republic is not a party to the Hague Convention. See Elisan Entm't, Inc. v. Suazo, 206 F.R.D. 335, 337 (D.P.R. 2002). As a consequence,

Another factor for the Court to consider in the private interest analysis is the primary language of the witnesses and documents. Here, most, if not all, of the documents will be in Spanish and many of the witnesses speak only (or primarily) Spanish. Extensive translations would be needed resulting in additional inconvenience and cost. Trujillo v. Banco Central Del Ecuador, 35 F. Supp. 2d 908, 915 (S.D. Fla. 1998). Litigating in the Dominican Republic would eliminate the translation issue.

Considerations of economy and efficiency also favor dismissal. The alleged fraud of which the Liquidation Commission complains here has been and continues to be the subject of investigation and litigation in the Dominican Republic. A 10-month investigation has already resulted in an Order of dismissal in favor of Alvarez Renta and that Order is presently on appeal. Baez Figueroa and Baez Cocco have been bound over for criminal trial and there are multiple collateral proceedings that remain pending in the Dominican Republic. These parties (and others) have expended considerable time and resources in these proceedings over the course of the last year and now face a duplication of their efforts and expenses here.

The dismissal of the Complaint and its reinstatement in the Dominican Republic, where proof is more readily available and where both the parties and the courts have already expended considerable resources, will enable a more complete and expeditious adjudication of the Liquidation Commission's claims and will prevent the

---

the production of documents in this forum may be hampered. See Transunion Corp. v. PepsiCo, Inc., 811 F.2d 127, 129 (2d Cir. 1987) (private interest factors favored dismissal of action where discovery probably would require the use of letters rogatory and would be complicated by a Philippines presidential decree prohibiting removal of documents from the Philippines without official approval).

costly duplication of efforts.  Thus, from the standpoint of practicality, expediency and expense, the private interest factors strongly favor the forum of the Dominican Republic.

C.    The Public Interest Factors Weigh in Favor in Dismissal.

The public interest factors also favor the Dominican Republic. The "public interest" factors include 1) administrative difficulties such as court congestion; 2) imposition of jury duty on a community with no relation to the litigation; 3) local interest in having localized controversies decided at home; 4) difficulties associated with application of foreign law; and 5) any other burdens imposed on the forum.  Gulf Oil, 330 U.S. at 508-9.

Here, it is undisputed that the Liquidation Commission's allegations are centered almost entirely in the Dominican Republic.  Although the Liquidation Commission alleges some contact with the United States, it does not allege that the effects of the alleged fraudulent scheme were felt by the Liquidation Commission in the United States or that any citizen of the United States was harmed.  Indeed, the bulk of the allegations describe schemes based in the Dominican Republic, the alleged goals of which were to loot Baninter, a Dominican bank, at the sole expense of Baninter in the Dominican Republic.  This Court thus has no "local interest" in the controversy.  The Dominican Republic, in contrast, has a strong "local interest" in enforcing the laws and regulations of the Dominican Republic and preserving the integrity of the Dominican banking system.  See Republic of Panama, 119 F.3d at 953 (finding little reason to submit United States' courts and jurors to the burdens of

litigating a claim concerning a fraudulent scheme centered in the Cayman Islands, England and Luxembourg); <u>see also</u> <u>Allstate Life Ins. Co. v. Linter Group Ltd.</u>, 994 F.2d 996, 1002 (2d Cir. 1993) (where liquidation is one of largest in foreign country's history and actions undertaken by banks in furtherance of fraud were carried out in foreign country, there is a strong local interest in trying case in foreign country); <u>Kempe v. Ocean Drilling & Exploration Co.</u>, 876 F.2d 1138, 1146 (5th Cir. 1989) ("Bermuda is an international insurance center and has a strong interest in regulating its industry so as to retain credibility abroad."); <u>Trujillo</u>, 35 F. Supp. 2d at 914 (public interest factors favor trial in foreign country whose citizens' money was stolen thus "incurr[ing] an immensely greater degree of suffering"); <u>Sussman v. Bank of Israel</u>, 801 F. Supp. 1068 (S.D.N.Y. 1992) (holding that public interest factors favored foreign forum where illegal scheme was "hatched" in violation of foreign country's law, notwithstanding fact that moneys were routed through New York bank).[8]

The fact that the law of the Dominican Republic is likely to apply to this dispute also militates in favor of the Dominican forum. <u>Gulf Oil</u>, 330 U.S. at 509; <u>Chhawchharia v. Boeing Co.</u>, 657 F. Supp. 1157, 1162 (S.D.N.Y. 1987) (where "a strong possibility exists that foreign law will be applied . . . the trial court has discretion to weigh into the *forum non conveniens* determination the consideration

---

[8] Although the Liquidation Commission alleges that the defendants' activities were designed to manipulate local banks, "this allegation does not, in and of itself, create an interest in this forum where there is no one here claiming any injury." <u>Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.</u>, 85 F. Supp. 2d 282, 307 (S.D.N.Y. 2000); <u>see</u> <u>Calgarth Invs. Ltd. v. Bank Saderat Iran</u>, 1996 WL 204470, *6 (S.D.N.Y. 1996) ("debits and credits at New York bank accounts, without more, do not give New York or the United States an interest in transactions that otherwise are entirely foreign").

that problems will inherently arise when a court is forced to apply a law with which it is unfamiliar.") (citation omitted). Under these circumstances, it is clearly preferable for the action to proceed in the Dominican Republic, a forum familiar with the governing law, rather than here, where the applicable law will likely be foreign to this Court. Republic of Panama, 119 F.3d at 953 (dismissal on *forum non conveniens* grounds proper where court would have to apply Panamanian law); Chierchia, 738 F. Supp. at 1390 (dismissal on *forum non conveniens* grounds proper where court would have to apply foreign law); accord Magnin, 91 F.3d at 1430 (finding it "[f]ar better that the case be tried in [a foreign country] by one or more jurists as familiar with [the foreign] law as we are unfamiliar with it").

### V.   The Court Should Dismiss This Action Without Prejudice Based on Principles of International Comity and Abstention

Even if the Judge had not already entered the Order exonerating Alvarez Renta, principles of international comity and abstention would militate in favor of dismissing this action without prejudice in deference to the proceedings pending in the Dominican Republic relating to the collapse of Baninter. As explained by the Eleventh Circuit in Posner, the Turner principles apply regardless of whether foreign proceedings have yet resulted in a judgment; the mere pendency of foreign proceedings requires the Court to consider principles of international comity and abstention. Posner, 178 F.3d at 1223-24. Indeed, many federal courts have dismissed cases solely on the basis of international comity where parallel proceedings have yet to result in a judgment. See Paraschos v. YBM Magnex Int'l, Inc., 130 F. Supp. 2d 642, 645 (E.D. Pa. 2000). In Paraschos, for example, the court dismissed a securities class

32

action on international comity grounds where multiple proceedings concerning the same alleged fraud were already pending in Canada and the action was "overwhelmingly dominated by Canadian interests." Id. at 647.

Here, as previously noted, multiple proceedings have been filed in the Dominican Republic relating to the financial failure of Baninter. Some of those proceedings have come to judgment (in Alvarez Renta's favor) and other proceedings (including actions against Baez Figueroa and Baez Cocco) remain pending. A partial list of these proceedings, together with copies of the proceedings, has been provided for the Court's convenience as composite Exhibit G. What all of this makes clear, however, is that the interest of the Dominican Republic in Baninter and the litigation relating to its failure is "overwhelming." Under these circumstances, there is no question that the Court should dismiss this action without prejudice to permit the Dominican legal system to address the issues of fundamental importance to the Dominican Republic raised by this dispute.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and dismiss the Complaint as against Alvarez Renta and Wadeville without prejudice.

Respectfully submitted,

Parker D. Thomson, Esq.
Florida Bar Number: 081255
Laura Besvinick, Esq.
Florida Bar Number: 391158
Luca R. Bronzi, Esq.
Florida Bar Number: 015628
HOGAN & HARTSON L.L.P.
1111 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone:    (305) 459-6500
Facsimile:    (305) 459-6550

By: _____
    Parker D. Thomson

*Attorneys for Defendants Luis Alvarez Renta*
*and Wadeville Investments, Ltd.*

and

Anthony Joseph Barranco, Esq.
Florida Bar Number:  100472
Barranco, Kircher & Vogelsang, P.A.
150 West Flagler Street, Suite 1400
Miami, Florida 33130-1537
Telephone:    (305) 371-8575
Facsimile:    (305) 371-7021

*Attorneys for Defendant Luis Alvarez Renta*

34

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served

via U.S. Mail this 2丸 day of May, 2004, to:

C. Thomas Tew, Esq.
Matias R. Dorta, Esq.
Tew Cardenas, L.L.P.
201 South Biscayne Blvd.
Miami Center - 26th Floor
Miami, Florida 33131-4336

By: _____
                 Parker D. Thomson

35

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550